FILED

2017 Apr-11  PM 04:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| MARCUS JAMES COPENY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  5:16-cv-00865-KOB-SGC |
| | ) | |
| DON KYLE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiff has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging violations of his rights under the Constitution or laws of the United States. (Doc. 1).  The plaintiff names the following defendants in the complaint: Decatur City Mayor Don Kyle, the Decatur Police Department, Officer Brian Prosser, Officer Rutherford and Sgt. Letson.  (*Id.* at 1).  The plaintiff seeks monetary damages.  (*Id.* at 5).  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I.  STANDARD OF REVIEW

The Prison Litigation Reform Act, as partially codified at 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against

government officers or employees. The court must dismiss the complaint or any portion thereof that it finds frivolous, malicious, seeks monetary damages from a defendant immune from monetary relief, or does not state a claim upon which relief can be granted. *Id.* Moreover, the court may *sua sponte* dismiss a prisoner's complaint prior to service. *See* 28 U.S.C. § 1915A(a).

Under § 1915A(b)(1) and § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit or the claim seeks to enforce a legal right that clearly does not exist. *Id.* at 327.

Moreover, a complaint may be dismissed pursuant to 28 U.S.C. § 1915A (b)(1) for failure to state a claim upon which relief may be granted. A review on this ground is governed by the same standards as dismissals for failure to state a claim under Rule 12(b)(6) of the *Federal Rules of Civil Procedure*. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). In order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'show that the pleader is entitled to

relief.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007) (alteration incorporated).   But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Similarly, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. *Jones*, 549 U.S. at 215.

*Pro se* pleadings "are held to a less stringent standard than pleadings drafted by attorneys" and are liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). However, they still must allege factual allegations that "raise a right to relief above the speculative level." *Saunders v. Duke,* 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted).

## II.  FACTUAL ALLEGATIONS

On April 11, 2015, Officer Prosser "intercepted" the plaintiff as he was transporting a friend with "life threatening injuries" to the Decatur General Hospital Emergency Room.   (Doc. 1 at 3).   Officer Prosser approached the plaintiff's car and "stood facing" the plaintiff.   (*Id.*).   The plaintiff identified himself and informed Prosser his "passenger had been a victim of a violent crime and that he was in need of immediate medical attention." (*Id.*).   Then, in an attempt to allow Officer Prosser a full view of the injured party, and with his "hands in plain view," the plaintiff exited the vehicle.  (*Id.*).

3

Prosser "escalated [the situation] and began to yell" that he knew who the plaintiff was.  (*Id.*).  The plaintiff replied that his friend might be dying and motioned for Prosser to look inside the vehicle.  (*Id.*).  In response, Prosser tased the plaintiff in the back of his neck, causing the plaintiff to fall to the ground, face down.  (*Id.* at 3-4).  Officer Rutherford also tased the plaintiff's neck, and he and Prosser held the plaintiff to the ground, both tasing the back of his neck and head while simultaneously kicking and jabbing the plaintiff's "scrotum."  (*Id.* at 4).  After the plaintiff "was placed on the hood of a Decatur City patrol car," Sgt. Letson "assault[ed]" his genitals.  (*Id.*).

The plaintiff was transported by ambulance to the Decatur General Hospital E.R. with injuries.  (*Id.*).  Due to the "culture of indifference perpetuated by the long standing relations between the Decatur City Police Department and the Decatur General emergency room staff," he "was treated with obvious bias and thus transported to the Morgan County Jail."  (*Id.*).  After he posted bail, the plaintiff "checked into" the Crestwood Hospital E.R. in Huntsville, Alabama.  (*Id.*). Medical personnel determined the plaintiff had fractured his left hand as a result of falling when he was tased.  (*Id.*).

## III.  ANALYSIS

### A.   Decatur City Mayor Don Kyle

The plaintiff names Mayor Don Kyle as a defendant but makes no

allegations against Kyle in the complaint.  To the extent the plaintiff may be attempting to hold Kyle liable on the basis of his supervisory role as the Decatur City Mayor, the complaint fails to state a claim.  "[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted).  "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal,* 556 U.S. at 677.

To hold a supervisory official or an employer liable, the plaintiff must demonstrate that either: (1) the supervisor/employer personally participated in the alleged constitutional violation; or (2) a causal connection between the actions of the supervisor/employer and the alleged constitutional violation exists.  *Hartley*, 193 F.3d at 1269 (citing *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)). The plaintiff has not pled specific facts tending to show Kyle was aware of, involved in, or connected to the allegations supporting his claims.  Accordingly, the claims against Kyle are due to be dismissed for failure to state a claim upon which relief can be granted.

## B.    The Decatur Police Department

The plaintiff names the City of Decatur Police Department as a defendant. (Doc. 1 at 1, 4).  However, a police department is not a legal entity capable of

being sued under § 1983. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) ("Sheriff's departments and police departments are not usually legal entities subject to suit"). Accordingly, the City of Decatur Police Department is due to be dismissed as a defendant.

## C.     Officer Prosser, Officer Rutherford, And Sgt. Letson

### 1.     Fourth Amendment Excessive Force

#### a.     Official Capacity

When "a section 1983 plaintiff sues government employees (such as police officers) in their official capacities, the suit is in actuality against the governmental entity that the individuals represent." *Farred v. Hicks*, 915 F.2d 1530, 1532 (11th Cir. 1990) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). In the present case, the plaintiff's lawsuit against defendants Prosser, Rutherford and Letson in their official capacities is actually a lawsuit against the City of Decatur, Alabama.

The plaintiff has not named the City of Decatur as a defendant. But even if he had, the plaintiff has not alleged facts to state a plausible claim against the City. A governmental entity cannot be held liable under § 1983 unless an injury is inflicted by a government's custom or policy. *Morro v. City of Birmingham,* 117 F.3d 508, 514 (11th Cir. 1997) (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978)). Therefore, the plaintiff must identify the "municipal policy or custom that

6

caused" his injury. *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999) (internal quotation and citation omitted).

In order for a plaintiff to demonstrate a policy or custom, it is "generally necessary to show a persistent and wide-spread practice." *Wayne*, 197 F.3d at 1105 (internal quotations and citations omitted); *see also Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by *those whose edicts or acts may fairly be said to represent official policy*, inflicts the injury that the government as an entity is responsible under § 1983." *Morro*, 117 F.3d at 514 (quoting *Monell*, 436 U.S. at 694) (emphasis added in *Morro*). The plaintiff has not alleged, nor do the facts suggest, that the alleged excessive force used by Prosser, Rutherford, or Letson was a matter of municipal policy or custom. Accordingly, the plaintiff's excessive force claims against these defendants in their official capacities are due to be dismissed.

      b.  <u>Individual Capacity</u>

"A citizen's Fourth Amendment right to be free from unreasonable searches and seizures includes 'the right to be free from the use of excessive force in the course of an arrest.'" *Weiland v. Palm Beach Co. Sheriff's Office*, 792 F.3d 1313, 1326 (11th Cir. 2015) (quoting *Saunders v. Duke*, 766 1262, 1266-67 (11th Cir. 2014)). "A 'seizure' triggering the Fourth Amendment's protections occurs only

when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'"  *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).

"Claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard," *i.e.*, "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Id.* at 395, 397.  "[P]roper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* at 396.  There is no excessive force "if a reasonable officer in the same situation would have believed that the force used was not excessive."  *Thornton v. City of Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998) (citing *Anderson v. Creighton*, 483 U.S. 635 (1987)).

The plaintiff takes no issue with Officer Prosser's interception of his vehicle, and since he was attempting to transport a friend with life threatening injuries to the emergency room, the undersigned infers Prosser stopped the plaintiff for speeding, driving erratically or recklessly, or a similar traffic violation.  (*See* Doc.

1 at 3).  Based on this inference, Prosser's only plausible reason for approaching the plaintiff was to address traffic offenses.

The plaintiff does not reveal what time of day the traffic stop occurred or the location of the stop.  The allegations do not suggest Prosser suspected additional criminal activity was afoot—that he knew the plaintiff was fleeing from a crime, had a warrant for his arrest, or the like.  Nonetheless, a reasonable law enforcement officer approaches any traffic stop with caution.  Depending on time of day, the location of the stop, and knowledge about the driver, an objectively reasonable officer might approach with extreme caution.

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Lee v. Ferrero*, 284 F.3d 1188, 1197 (11th Cir. 2002) (citing *Graham*, 490 U.S. at 396).

> For even minor offenses, permissible force includes physical restraint, use of handcuffs, and pushing into walls.  *See Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) ("[T]his Circuit has established the principle that the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment.");  *Lee*, 284 F.3d at 1200 (citing cases permitting use of handcuffs); *Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997) (no constitutional violation to slam plaintiff against wall, kick plaintiff's legs apart, and require plaintiff to raise arms above his head)[.]

*Brown v. City of Huntsville, Ala.,* 608 F.3d 724, 740 (11th Cir. 2010).

In the present case, the complaint alleges Prosser approached the plaintiff's

9

vehicle and faced the plaintiff. The plaintiff identified himself, explained his situation, and exited the vehicle with his hands in plain view. Prosser yelled that he knew who the plaintiff was, and the plaintiff motioned to his car and stated that his friend might be dying. The plaintiff does not reveal whether Prosser told him to exit the vehicle, and the facts suggest the plaintiff took it upon himself to do so. Considering the inherent possibility of danger to law enforcement officers in orchestrating a traffic stop, Prosser's initial reaction of yelling was not unreasonable, even if a minor traffic violation and the plaintiff exiting the vehicle were the only reasons for the reaction.

However, accepting the facts alleged in the complaint as true, Prosser's subsequent actions were objectively unreasonable. The plaintiff probably committed a traffic violation and got out of his vehicle without permission. But the facts suggest he also pulled over, sat in his vehicle, and waited for Prosser to approach. When Prosser stood at the driver's side window the plaintiff identified himself and explained his situation. While exiting his car, the plaintiff put his hands in plain view, a clear signal of his non-threatening posture toward Prosser and his acquiescence to authority. Moreover, when Prosser yelled at him, the plaintiff again told Prosser that he feared his friend might be dying and motioned toward his car so that Prosser could confirm his statement. Prosser was not the lone officer on the scene during this time. Indeed, at least one of the defendants,

10

Officer Rutherford, was in very close proximity to the plaintiff and Prosser.

Under the circumstances alleged, a reasonable officer in Prosser's position would not tase the plaintiff in the back of the neck, causing him to fall down. (Doc. 12 at 3-4). Nor would a reasonable officer in Rutherford's position join in to tase the fallen plaintiff a second time. It was clearly objectively unreasonable for both Prosser and Rutherford to continue to use force by holding the plaintiff down, tasing his neck and head, and poking and kicking him in the scrotum. (*Id.* at 4). Finally, no objectively reasonable officer would have assaulted the plaintiff's genital area as Letson did after the plaintiff had been placed against the hood of a patrol car. (*Id.*).

"Gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (finding Fourth Amendment excessive force when officer "punched plaintiff in the stomach when he was handcuffed and not struggling or resisting"); *Lee v. Ferraro*, 284 F.3d at 1198 (excessive force used by defendant officer who slammed the plaintiff's head on the dashboard of his patrol after arresting her without incident for honking her car horn). The plaintiff's allegations are sufficient to state Fourth Amendment excessive force claims against Prosser, Rutherford, and Letson, and they should be directed to respond.

## 2.    Deliberate Indifference to Serious Medical Needs

The plaintiff alleges that after he arrived at Decatur General Hospital via ambulance, the "emergency room staff" treated him "with obvious bias" because there is a "culture of indifference perpetuated by the long standing relations between the Decatur City Police Department and the Decatur General emergency room staff." (Doc. 1 at 4).  Thereafter, the plaintiff was "transported to the Morgan County Jail."  (*Id.*).  When the plaintiff later checked himself into Crestwood Hospital Emergency Room in Huntsville, Alabama, medical personnel determined his left hand had been fractured as a result of falling when tased.  (*Id.*).

Admittedly, a fractured hand can constitute a serious medical need. However, the plaintiff has pled no facts suggesting Prosser, Rutherford, or Letson were deliberately indifferent to that need.  In fact, the inference is that they called an ambulance to medically assist the plaintiff.  Additionally, the plaintiff does not allege Prosser, Rutherford, and Letson accompanied him to or met him at the Decatur General Hospital E.R., nor does he claim they influenced unknown hospital staff to treat him with "bias," a term he does not explain in any factual detail.  In similar fashion, the plaintiff proffers no facts to support his claim that his serious medical needs were ignored because of some longstanding "culture of indifference perpetuated" by the police department and emergency room staff.

The plaintiff's vague, conclusory and general assertions are not sufficient to

state a plausible claim of deliberate indifference to his serious medical needs against Prosser, Rutherford, and Letson in their official or individual capacities. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Accordingly, the claims for deliberate indifference against Prosser, Rutherford and Letson are due to be dismissed.

## IV.  RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** all claims in this action, except the Fourth Amendment excessive force claims against defendants Prosser, Rutherford, and Letson in their individual capacities, be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915A(b)(1) for failing to state a claim upon which relief can be granted.  The undersigned **FURTHER RECOMMENDS** the remaining claims be **REFERRED** to the undersigned for further proceedings.

## V.  NOTICE OF RIGHT TO OBJECT

The plaintiff may file specific written objections to this report and recommendation.  Any objections must be filed with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered.  Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objection.  Failure to object to factual findings will bar later review of those findings, except

for plain error.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

On receipt of objections, a United States District Judge will make a *de novo* determination of those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the findings of fact and recommendations made by the magistrate judge.  The district judge also may refer this action back to the magistrate judge with instructions for further proceedings.

The plaintiff may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  The plaintiff may only appeal from a final judgment entered by a district judge.

**DONE** this 11th day of April, 2017.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE