# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| MARCUS JAMES COPENY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:16-cv-00865-KOB-SGC |
| ) | |
| OFFICER BRIAN PROSSER, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

On August 10, 2018, the magistrate judge entered a report recommending the defendants' special report be treated as a motion for summary judgment. (Doc. 36). The report further recommended the motion be granted and that all claims against the three remaining defendants–Officer Brian Prosser, Officer Rutherford, and Sergeant Letson–be dismissed. (*Id.*). The plaintiff filed objections to the report and recommendation on August 24, 2018. (Doc. 37). The plaintiff's objections do not take issue with the recommended dismissal of Defendant Officer Letson, but focus exclusively on Officers Prosser and Rutherford. For the reasons that follow, the plaintiff's objections will be OVERRULED.

The plaintiff's first objection contends Officers Prosser and Rutherford intentionally tased him in the neck: "an area in which these officers have been trained to avoid at all costs when it comes to making an attempt to subdue anyone." (Doc.

37 at 1-2). No evidence in the record supports the plaintiff's contention that the neck is an inappropriate location to apply a taser. Accordingly, this objection is **OVERRULED**.

The plaintiff also argues Officers Prosser and Rutherford admitted in their declarations that they tased his neck for "no less than 3 minutes." (Doc. 37 at 1). This objection is **OVERRULED**. Contrary to the plaintiff's contention, neither officer stated they tased him for three minutes. Instead, both officers testified they became winded "after about two minutes of struggling" to arrest the plaintiff. (Doc. 27-1 at 9; Doc. 27-2 at 6). During this struggle, Rutherford testified he "placed the Taser at the top of" the plaintiff's shoulders and warned the plaintiff he was going to be tased if he did not cease resisting arrest. (Doc. 27-2 at 5). When the plaintiff continued to resist, Rutherford "gave a loud verbal warning," but the plaintiff "continued to pull away and began to kick with his legs." (*Id.* at 5-6). Rutherford then performed a "drive stun" on the plaintiff's neck. (*Id.* at 6).[1] Prosser echoes this testimony but describes the taser as being deployed to the "back of the [plaintiff's] lower neck area." (Doc. 27-1 at 8).

---

[1] Rutherford explained "a drive stun is direct application of the Taser to the skin and is not a deployment of the prongs of the taser." (Doc. 27-2 at 6).

According to Rutherford, the plaintiff shouted and continued to "pull away and kick wildly" as the officers tried to gain control of him, so Rutherford again performed a drive stun to the top of the plaintiff's shoulders. (Doc. 27-2 at 6). The plaintiff continued yelling, kicking, and pulling away, and Rutherford applied a third drive stun cycle above his shoulders. (*Id.*). Prosser's testimony again echoes Rutherford's, except that he does not mention the location of the second and third drive stuns. (Doc 27-1 at 8-9).

The body camera footage does not show precisely where Rutherford placed the taser. The audio recording reveals Rutherford tased the plaintiff three times. (Prosser, 22:32:37-42, 22:32:47-52, and 22:32:53-55).[2] The first and second cycles lasted five seconds; the last cycle lasted two seconds and immediately ended when the plaintiff acquiesced. (*Id.*). A total of eighteen seconds passed between the first and third tasing. (*Id.*). Thus, the record wholly contradicts the plaintiff's assertion that the officers tased him–or testified that they tased him–for three minutes.[3]

---

[2] Citations to the audio and video evidence refer to the name of the officer from whom the recording was taken, as well as the time-stamp embedded in the audio and video evidence.

[3] The plaintiff also declares the body camera video cannot support the defendants' testimony that they had known him for seven years prior to the incident because he had been incarcerated in Tennessee until 2008. (Doc. 37 at 1). However, the plaintiff does not deny his previous incarcerations in the Decatur City Jail and does not dispute each of the officers' testimony that they were familiar with him from previous arrests and other law enforcement activities. Further, the video clearly shows that the plaintiff, Prosser, and Rutherford knew and recognized each other. (Prosser 22:27:14-22). In fact, as Prosser approached the driver's side of the plaintiff's vehicle, the plaintiff greeted him as "Rutherford." (*Id.*). When Prosser reached the plaintiff's window, the

3

The plaintiff further argues the body camera footage does not reveal the "complete story" because "it is inaudible and unviewable at crucial moments." (Doc. 37 at 3). As an initial matter, the video and audio recordings of the entire event totally contradict the plaintiff's version of events. Even though darkness and movement hinders a clear view of the tasing, the body camera footage shows Prosser grappling with his handcuffs and his close proximity to the plaintiff. (*Id.* at 22:32:09-27). The second and third tasing events are also visible. (*Id*. at 22:32:47-55).

In addition, the audio recording is more than clear. It reflects the plaintiff continued to actively resist arrest after Rutherford warned he would be tased. (Prosser, 22:32:15). The plaintiff resisted through the second tasing and ceased resisting during the third tasing. (*Id.* at 22:32:37-55). During the eight-second period while the plaintiff was tased a second and third time, the plaintiff's passenger, Greg Harris–captured on video standing behind Prosser's police unit and in close proximity to the fracas–can twice be heard telling the plaintiff to put his hands behind his back. (Prosser, 22:31:12-20, 22:32:49-50 and 22:32:53-56). Also audible during this time is a woman–one of the bystanders who witnessed the arrest–twice telling the plaintiff to put his hands behind his back. (*Id.*). Once the plaintiff stated his hands were behind his back, the officers ceased all force. (*Id.* at 22:32:56-57). Throughout the

---

plaintiff corrected himself and greeted him by name. (*Id.*).

4

event, both officers can be heard breathing heavily and repeatedly ordering the plaintiff to stop resisting and place his hands behind his back. The only reasonable inference from this evidence is that the plaintiff was actively resisting arrest until after the third tasing.

The video and audio recordings then show Mr. Harris did not understand why the plaintiff was continuing to behave unreasonably and he repeatedly encouraged the plaintiff to allow the officers to search him. (Heflin, 22:46-55). At no time did Mr. Harris make any comment suggesting the plaintiff was not resisting during the tasings or that the officers' continued use of force was unreasonable. Likewise, the gathered bystanders supported the police officers' efforts and chided the plaintiff for his behavior. (Heflin, 22:46-55; Renshaw 22:47-49). When all of the video and audio recordings are considered, no reasonable jury would believe the plaintiff's version of events as to the officers' use of force, including use of the taser.

Next, the plaintiff points to the portion of the magistrate judge's report stating that his Decatur General Hospital blood test yielded "normal results" to argue the officers dishonestly and maliciously charged him with DUI. (Doc. 37 at 4). The plaintiff's objections are **OVERRULED**. In addition to driving with a suspended license, the plaintiff never has denied driving erratically or failing to stop at a stop sign immediately before Prosser initiated the traffic stop. Furthermore, records from

Decatur General Hospital reveal medical professionals diagnosed him as "intoxicated" upon admission. (Doc. 27-7 at 3-4). The hospital lab report shows the plaintiff's blood alcohol content was .131, well over the legal limit. (*Id.* at 22).

The plaintiff also argues the charge for trafficking in synthetic cannabinoids "was completely bogus" on legal grounds–not because he did not actually possess the substance–and that he was "extorted into a best interest plea" to possession. (Doc. 36 at 2-3). This argument is immaterial and irrelevant to the claims in this action.

The plaintiff requests the court allow him to present the testimony of Greg Harris, his passenger on the night of the incident. (Doc. 37). The court DENIES the plaintiff's request. The magistrate judge afforded the plaintiff an opportunity to obtain and present the evidence he desired prior to considering the defendants' motion for summary judgment. The plaintiff did not offer any testimony from Mr. Harris. Instead, the only non-documentary evidence the plaintiff offered was a declaration making the type of "sovereign citizen" arguments the Eleventh Circuit routinely finds frivolous. *See United States v. Sterling*, 739 F.3d 228, 233, n.1 (11th Cir. 2013); (*see* Doc. 32 at 1).

Finally, the plaintiff requests the court review photographs of his neck to "serve as evidence of the brutal and excessive force" used against him during the unlawful search, charging, and arrest. (Doc. 37 at 4). Until his objections, the

plaintiff never has claimed the defendants' unlawfully searched, charged, or arrested him for trafficking or driving under the influence of alcohol. No allegations in the complaint could be construed as supporting these claims. Accordingly, those claims are not before the court.[4]

As for the photographs, the plaintiff has not identified which photographs show his neck. The photographs are taken so close to the plaintiff's body that, other than those of his arms, hands, and ear, discerning the body part photographed or any

---

[4] Even if these claims were at issue, the two-year statute of limitations bars the unlawful search and arrest claims. *See Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989). Here, the statute of limitations for unlawful search and arrest began to run on April 11, 2015, and expired on April 11, 2017. *Rozar v. Mullis*, 85 F.3d 556, 561-62 (11th Cir. 1996); *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) (holding the statute of limitations for unlawful arrest begins at the time of arrest). Alternatively, the court finds: (1) the plaintiff's undisputed erratic driving constituted probable cause for the initial stop; (2) Prosser smelled alcohol and synthetic marijuana emanating from the plaintiff; and (3) Prosser was aware of the plaintiff's criminal history. The search did not exceed Fourth Amendment limitations because it was a protective pat down and a search incident to arrest. *See Terry v. Ohio*, 392 U.S. 1 (1968). Prosser felt the package of synthetic marijuana during the search, whereupon the plaintiff began resisting arrest and the search. After his arrest, a large amount of synthetic marijuana was discovered in the plaintiff's car. Because the officers had probable cause to arrest the plaintiff for driving under the influence of alcohol, he cannot pursue any claims for malicious prosecution related to that charge. *See Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003)(identifying the lack of probable cause as an element of a Fourth Amendment malicious prosecution claim). Furthermore, the plaintiff pleaded guilty to possession of synthetic marijuana as a lesser included offense of trafficking. To state a malicious prosecution claim, the plaintiff must not only state facts suggesting a lack of probable cause but also a dismissal of the case in his favor. "Only terminations that indicate that the accused is innocent ought to be considered favorable." *Uboh v. Reno*, 141 F.3d 1000, 1004 (11th Cir. 1998) (quoting *Hilfirty v. Shipman*, 91 F.3d 573, 580 (3rd Cir. 1996)). "Withdrawal of criminal charges pursuant to a compromise or agreement does not constitute favorable termination and, thus, cannot support a claim for malicious prosecution." *Id.* Finally, the defendants are correct that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars the plaintiff's pursuit of monetary damages for any Fourth Amendment claim concerning the synthetic marijuana found on his person. (Doc. 27 at 46).

evidence of injury is impossible. (Doc. 34 at 21-29). Three of the photographs appear to show an unusual mark that could be the result of a taser burn. (*Id.* at 21 (both photos); *id.* at 29 (last photo)). These photographs are irrelevant. The defendants do not dispute they tased the plaintiff three times in the shoulder or neck area. The disputed issue is why, how, and when the officers used the taser. In this case, with all of the substantive evidence of the plaintiff's struggle against the officers, burn marks do not create a genuine dispute as to excessive force.

Additionally, although not addressed in the magistrate judge's report, the defendants also raised qualified immunity as an affirmative defense to the plaintiff's excessive force claims. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is intended to "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 248 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).

Courts utilize a two-part framework to evaluate qualified immunity claims. To survive a motion for summary judgment, the plaintiff must satisfy the two-pronged qualified immunity standard. The plaintiff must show that (1) the facts alleged constitute a violation of his constitutional rights; and (2) the constitutional rights were "clearly established" when the defendant committed the act. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The court can consider the prongs in either order. *Id.* at 236.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [police officer] that his conduct was unlawful in the situation he confronted." *Loftus v. Clark–Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (internal quotation marks omitted). As to whether the conduct alleged is unlawful, courts look to a number of factors to determine whether a particular use of force was excessive. These include "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." *Draper v. Reed*, 369 F.3d 1270, 1277 (11th Cir. 2004). Other factors include "the severity of the crime at issue, whether the suspect posed an immediate threat, and whether the suspect actively resisted arrest." *Graham v. Connor*, 490 U.S. 386 396 (1989); *see also Hoyt v. Cooks*, 672 F.3d 972, 978-79 (11th Cir. 2012).

While the plaintiff is not required to point to cases specifically addressing his factual scenario, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The plaintiff may demonstrate the contours of the right were clearly established in a number of ways. First, the plaintiff may show "a materially similar case has already been decided." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005) (citing *Harlow*, 457 U.S. at 818). Second, the plaintiff may point to a "broader, clearly established principle [that] should control the novel facts [of the] situation." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 74 (2002)). Finally, the conduct involved in the case may "so obviously violate" the constitution that analagous case law is unnecessary. *Id.* (citing *Lee*, 284 F.3d at 1199).

Construing the allegations in the light most favorable to the plaintiff, he contends: (1) the use of the taser was a violation of his constitutional rights; and (2) neither Prosser nor Rutherford are entitled to qualified immunity because the law was clearly established that the use of the taser as a means of pain compliance was excessive under the circumstances. As explained below, these arguments fail.

Several relevant, reported Eleventh Circuit cases consider whether the use of a taser or other nonlethal force[5] is constitutionally excessive. The Eleventh Circuit has found similar force to be excessive where the suspect is nonviolent and has not resisted arrest. For example, in *Fils v. City of Atlanta*, the Eleventh Circuit found excessive force when the officer used a taser twice in probe mode and once in drive stun mode to immobilize a non-threatening bystander. 647 F.3d at 1277. Most recently, the Eleventh Circuit concurred that the use of a taser was excessive force when the officer repeatedly tased the suspect who had ceased any resistance. *See Glasscox v. Argo, City of*, No. 16-16804, — F.3d —, 2018 WL 4346357 (11th Cir. September 12, 2018). Similarly, in *Vinyard v. Wilson*, the Eleventh Circuit concluded the use of pepper spray on a handcuffed and secured suspect in the back of a police car was excessive. 311 F.3d at 1355. Finally, in *Priester v. City of Riviera Beach, Fla.*, the Eleventh Circuit concluded the use of an attack dog was excessive where the plaintiff had submitted to the officer's commands and was lying flat on the ground. 208 F.3d 919, 927 (2000). Notably, all of these cases involved a plaintiff who had been compliant and non-violent when a officer used force.

---

[5] The Eleventh Circuit has analogized tasers to other nonlethal means, such as pepper spray. *Fils v. City of Atlanta*, 647 F.3d 1272, 1289 (11th Cir. 2011).

11

Nevertheless, police are permitted to use tasers to secure a suspect they reasonably perceive as threatening. In *Zivojinovich v. Barner*, the Eleventh Circuit concluded the use of a taser in probe mode against a suspect who violently resisted arrest and appeared to spit blood at an officer was not excessive force. 525 F.3d 1059, 1073 (11th Cir. 2008). Additionally, the Eleventh Circuit found the use of a taser in probe mode was reasonable against a suspect who was "hostile, belligerent, and uncooperative" but not close enough to the officer to pose an immediate threat. *Draper*, 369 F.3d at 1278. The initial offenses in these cases were quite minor: trespass in *Zivojinovich* and a broken tag light in *Draper*. However, the potential threat posed by the suspects sufficiently altered the constitutional calculus and allowed for a greater use of force. *Id.* at 1073.

Analyzing the plaintiff's case in light of these opinions, the court cannot conclude Prosser's and Rutherford's use of the taser in drive stun mode under these circumstances was clearly established as excessive. Regarding the need for force, the plaintiff was actively resisting arrest. The plaintiff repeatedly (1) refused to follow instructions; (2) behaved in an argumentative manner; (3) attempted to prevent the officers from searching his pants; and (4) reached for his waistband in direct disobeyance of the officers' commands. When the plaintiff continued to actively resist arrest, the officers used the taser to inflict pain and gain his compliance.

Even if the court were to find a genuine dispute as to whether the plaintiff was passively resisting arrest while on the ground during the tasing event, no applicable case law describes how a reasonable officer in Prosser's and Rutherford's position should respond in such a circumstance. At least one police department operating within the Eleventh Circuit encourages the use of a taser as a response to passive resistance. *See Chaney v. City of Orlando, Fla.*, 291 F. App'x. 238, 244 (11th Cir. 2008).

Additionally, regarding the extent of the injury inflicted, the court cannot find any relevant, reported case considering the use of a taser in drive stun mode. All of the foregoing cases involve tasers deployed in probe mode, a significantly more intrusive and painful experience. Drive stuns cause pain but generally leave little lasting damage beyond possible burn marks. *Hoyt v. Cooks,* 672 F.3d 972, 975-76, n.5 (11th Cir. 2012). In this way, drive stun tasing is a lesser use of force than the force analyzed in the cases discussed above.

In summary, the plaintiff has not pointed to "case law with indistinguishable facts clearly establishing the constitutional right [or] a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right." *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291-92 (11th Cir. 2009). Therefore, Prosser and Rutherford are entitled to qualified immunity unless

their conduct was "so far beyond the hazy border between excessive and acceptable force that [they] had to know [they were] violating the Constitution." *Willingham*, 321 F.3d at 1303. The circumstances here do not indicate Prosser's or Rutherford's actions were over the line of acceptable force, much less so far past the line to defeat their qualified immunity

Officers Prosser and Rutherford are entitled to summary judgment because the plaintiff has failed to create a genuine dispute of material fact regarding his claim of excessive force in light of the audio and video evidence that totally contradicts the plaintiff's version. Alternatively, even if the plaintiff had created a genuine dispute regarding the constitutional violation, defendants Prosser and Rutherford are entitled to qualified immunity, and their motions for summary judgment are due to be granted.

Having carefully reviewed and considered *de novo* all the materials in the court file, including the report and recommendation and the plaintiff's objections, the court ADOPTS the magistrate judge's report and ACCEPTS her recommendation as MODIFIED here. The court OVERRULES THE plaintiff's objections. Accordingly, the defendants' motion for summary judgment is due to be granted, and all claims presented in the instant matter are due to be dismissed.

A court will enter a separate Final Order.

DONE and ORDERED this 20th day of September, 2018.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE